ARKANSAS STATE HIGHWAY COMMISSION *v.*
Mrs. Dannie ELLIS et al

74-132                                    514 S.W. 2d 702

Opinion delivered October 28, 1974

160

*Thomas B. Keys* and *Philip N. Gowen,* for appellant.

*Cotlett & Henderson,* for appellees.

CARLETON HARRIS, Chief Justice. This is a highway condemnation case. The property involved is located on the north side of Rodney Parham Road about 1,500 ft. west of Breckenridge Drive and contains 40.6 ft. of frontage on Rodney Parham Road. The area is wooded, unimproved and consists of 13.5 acres. The commission, on October 1, 1970, acquired by condemnation 9.57 acres and on trial, the jury returned a verdict for appellees, Mrs. Dannie Ellis and Mrs. Louise Ellis, in the amount of $106,200. From the judgment so entered, appellant brings this appeal. For reversal, it is asserted that the court erred in allowing evidence of a sale which was not placed of record until January, 1971, and it is also urged that the verdict is excessive and not supported by substantial evidence.

C. V. Barnes, a realtor of Little Rock, after thoroughly detailing the basis for his computations, testified that the market value of the 13.5 acres before the taking was $202,500; that the value of the land remaining after the taking of the 9.57 acres, together with two easements, was $31,400, leaving the amount of damages at $171,100. Byron More, a licensed realtor and broker of Little Rock, engaged in the real estate business since 1956, gave a before taking value of $229,500, and an after value at $42,700, or damages in the amount of $186,800. Wesley Adams, engaged in the appraisal business in Little Rock, testified on behalf of the commission and reached the figure of $39,200 as the before taking value of the land. He testified to the after taking value as $7,800, leaving

damages at $31,400. James T. Johnson, a staff appraiser for the commission, considered the before value to be $37,125, and the after value as $8,300, or damages in the amount of $28,825.

It is at once apparent that this is one of those cases where the experts for each side are "miles apart" and there is no way to reconcile their differences. No point would be served in detailing the evidence, which is rather lengthy, and simply deals with the reasons given by the experts in reaching their conclusions. We are only concerned with whether the court erred in allowing evidence of a sale not made of record until January, 1971, somewhere between three and four months after the taking of the land by the commission, and further, whether the verdict is supported by substantial evidence. As to the first contention, we find no merit. C. V. Barnes testified that the consideration per acre in a sale of land immediately east, adjoining the subject property, from International Paper Company to Midland Corporation, was $20,000 (he valued the land here in litigation at $15,000 per acre); that the contract for the sale of the adjoining property mentioned by Barnes was entered into on June 3, 1970, but the deed was not recorded until January, 1971. Appellant moved to strike the testimony of Barnes with reference to this sale "which took place after the date of condemnation as it is being used to establish the before value of the subject property." Counsel for appellees then stated to the court that the evidence was not introduced for the purpose of establishing the before value of the lands but only as a part of the information gathered by Barnes in support of his opinion. In fact, the testimony relative to this sale occurred after Barnes had testified at length about factors which he considered relevant in reaching his determination of value; he was then asked, "What other factors did you take into account in arriving at the values on this property before the taking and condemnation at that $15,000 an acre?" At any rate, this was the only objection made, and clearly refers only to the fact that appellant is asserting (because of the late recording) that the sale took place after the date of taking, and was therefore not admissible. In its brief, appellant argues that the International Paper Company to Midland sale involved property unlike that belonging to appellees, for the former was "whole", i.e., there were no intervening ownerships However, no such objection was made to the trial court, and

we do not consider the point, although the question of the intervening ownerships will be subsequently discussed. As to the objection made, there was no error. In the first place, when we consider the purpose of the evidence, we find it admissible. In Vol. 5, p. 253, § 18.42 [1] Nichols on Eminent Domain, we find:

> "A distinction must also be drawn relative to the foundation which must be laid for such evidence based upon whether the comparable sales data is used as support for an expert's opinion or as independent substantive evidence of value. Quite obviously, when evidence of the price for which similar property has been sold is offered as substantive proof of the value of the property under consideration, a foundation should be laid showing that the other property is sufficiently near that in question and that it is sufficiently like the property in question as to character, situation, usability and improvements to make it clear that the tracts are comparable in value. However, where evidence of sales of similar property is offered not as substantive proof of value, but merely in support of, and as background for, the opinion of an expert as to the value of the land in question, the requirement of such foundation is not so strict."

The evidence clearly establishes that the contract between International and Midland was entered into on June 30, 1970, and the transaction consummated at that time, though the deed was not recorded until a few months later. No case is called to our attention which holds that the evidence was inadmissible because the deed was not recorded until after the taking, and it is our view that the admission of this evidence was within the discretion of the trial court, and no abuse of discretion has been shown. It might again be pointed out that there was no objection, nor motion to strike the testimony on the basis of the fact that the International to Midland sale reflected enhancement due to highway construction.

We have no hesitancy in stating that appellees offered substantial evidence in support of their position. Mr. Barnes was undoubtedly the most thorough of all the witnesses who testified. The witness described the Ellis lands in detail, using maps and aerials, and testified about the development and growth of the general area. He described the soil, mentioned

that all utilities were available, that no drainage problems existed on the property, the fact there was access to the property before the taking of that bordering on the Rodney Parham Road, and he commented that the area is the fastest growing in western Little Rock; further, that the growth rate from 1960 to 1970 in the particular area was 118%.

Morse had been personally involved in the sale or development of numerous properties in the area, including Brookfield Subdivision, Treasure Hills, and Sturbridge Subdivision, and the witness, through his testimony, demonstrated his familiarity with the area involved. Appellant's principal contention appears to be that there are eight different pieces of property owned by other individuals within the Ellis tract and this fact causes the evidence of appellees' witnesses to lose its substantiality. We do not agree, for each witness testified that he took this fact into consideration. Barnes, who valued the Ellis property at $15,000 per acre, said that his valuation would have been $20,000 per acre except for the intervening tracts. Morse, who valued the property at $17,000 per acre, stated that his figure would have been $20,000, except for the intervening ownerships. Barnes said that he realized these various intervening owners could not be forced to sell, but emphatically stated that the purchase of the Ellis lands at $15,000 an acre "would have been an excellent investment in October of 1970." Morse, although agreeing on cross-examination that the intervening ownerships would have to be purchased in order to properly use the Ellis property, was also emphatic in his valuation of $17,000 per acre, and said that he would have paid that for it. The witness had experience in buying tracts with intervening ownerships, and actually was in the process of assembling a tract at the time of the trial.

Except for the ruling on the admissibility of evidence already discussed, there were no objections by appellant to the qualifications of the experts, testimony of these witnesses, no motions to strike the value testimony of either, nor any objections to any of the instructions. Certainly, we could not hold as a matter of law that the evidence offered was not substantial. It is true that the experts on behalf of appellant reached far different conclusions as to the amount of damage sustained, but, of course, the question of which witnesses to believe, or which opinions to accept, was a function of the

jury and that body was more nearly persuaded by the witnesses for appellees. We say "nearly" for the reason that it awarded considerably less than the amount of damage mentioned by these witnesses, though considerably more than the amount of damage reached by witnesses for appellant. Our language in *City of Mulberry* v. *Edwards*, 256 Ark. 944 511 S.W. 2d 468 (1974) is *apropos* to the present case, this court stating:

> "As to excessiveness, the verdict was within the amounts set by the witnesses, and we are in no position to substitute our judgment for that of the jury."

Affirmed.